EDNA G. IRWIN

*v.*

JAMES W. IRWIN.

[Decided October 4th, 1917.]

Under the evidence in this case—*Held,* that the wife was not guilty of extreme cruelty to her husband and that he must therefore support her, although, of course, he is not obliged to live with her.

On pleadings and proofs.

*Messrs. Mackay & Mackay,* for the complainant.

*Mr. Borden D. Whiting,* for the defendant.

LEWIS, V. C.

This is a bill for maintenance under the twenty-sixth section of the Divorce act, which provides, *inter alia,* that where the

husband abandons and neglects and refuses to support his wife, it shall be lawful for the court of chancery to decree and order such suitable support and maintenance as the nature of the case and circumstances of the parties render suitable and proper, in the opinion of the court, and to compel the defendant to give reasonable security for such maintenance and allowance, &c.

I find the following facts to be established: The complainant is a woman about twenty-eight years of age; she is in fair health, and was engaged in business previous to her marriage. There are no children, the only child having died within a few days of its birth. The husband was the one to leave the home, and to justify his conduct in doing so, he claims that the treatment he received from his wife was of such a cruel character that it was quite impossible for him to live with her. The court, however, has reached the conclusion that the wife's treatment of her husband did not amount to extreme cruelty, and although he has the privilege of living apart from his wife, if he sees fit, it still remains his duty to support her "for such time as the nature of the case and the circumstances of the parties render suitable and proper in the opinion of the court."

"To justify the abandonment of a wife and also refusal to support her, the husband must show the wife to have been guilty of a matrimonial offence such as will entitle him to a divorce." *Bradbury* v. *Bradbury, 74 Atl. Rep. 150.*

That a wife is extravagant, lazy, quarrelsome or intemperate, or neglects her duties, spends most of her time gossiping with neighbors, receiving attentions from men, or even going to saloons evenings with them, has been held insufficient to justify the husband in leaving his wife and refusing to support her. *Boyce* v. *Boyce, 23 N. J. Eq. 337; Bradbury* v. *Bradbury, supra.*

The defendant is a man of good character, and of mild disposition. At the time of his marriage to the complainant he was living at Oradell, New Jersey, with his widowed mother and his sister, who were in part, dependent upon him for their support. He owned the Oradell home, to which he brought his bride, and is in comfortable financial circumstances. She did not get on well with the mother and sister, particularly the lat-

ter. The wife says that the husband talked over affairs with his mother and sister, and not with her, and the testimony indicates that she was not given her proper place in the household at the outset. Things came to such a pass that finally the wife told the husband that it was a case of his mother and sister or herself having to go. The mother and sister then left the house, and the husband continued to help to support them.

The defendant seems to be a man that controversy of any character is distasteful to, and the wife high-spirited and keen to resent slights; and even after the removal of the mother and sister, matters grew still worse. The wife says the husband called her "common." He denies this, but says that he did characterize some of her remarks as "common talk." The wife wanted the Oradell house sold so that they could remove to New York. The husband acceded to her wish in this matter and put the house up for sale. Their troubles, however, continued. There was a difference of nearly twenty years between the ages of the respective parties, and there is no doubt in my mind that their difficulties arose through incompatibility of temper. She did not know what she wanted, and he had no great knowledge of the female sex. She evidently desired to be made much of, and if he had seen to it that she had a reasonable amount of affection, I think their dissentions would have ceased, especially when the mother and sister were not there to criticise her. She was, undoubtedly, a woman of hasty temper, and she had to relieve her mind in some way. The husband says that on one occasion she tried to push him downstairs; on another occasion that she tried to throw a chair at him; he also says that she threw a carving knife at him, which he managed to dodge; and that repeatedly, in anger, she came towards him with a knife, threatening to kill him, as well as herself, and that he took the knife from her; he also testified that she threatened him with a nail file, and in his struggle to take it from her the file was broken; that she also got possession of his revolver several times and threatened to end the lives of both of them.

Mrs. Irwin denies her husband's story and claims that at the time she had the carving knife and the revolver in her hand

were occasions on which she threatened to take her own life, and that her husband took the articles away from her.

Finally the husband wrote to the wife as follows:

"*Dear Edna:*—

"I regret that I find that it is impossible for us to live together hereafter.

"I have in the past pleaded with you to behave, and I told you, time and again, that things could not go on as they were, but it did no good and I could stand it no longer.

"Hereafter we will live apart and I advise you to go home to your father.   *   *   *

"Please remove your personal belongings from the house as soon as possible, and I will take away my clothes and close up the house.

"Sincerely,

"JAMES."

I have come to the conclusion, after carefully observing the demeanor of both the complainant and defendant, and the testimony given in this cause convinces me that the only effect on the husband of the wife's conduct has been to turn away his love, which the evidence does not disclose was very pronounced for her. I do not believe that he has ever been the least bit afraid of her; or that he ever thought for one second that she would harm him. To a man of his disposition she was, of course, a trial, but that her conduct amounted to extreme cruelty, I am unable to see. If the complainant had become insane the defendant would still have to support her. A man cannot get rid of his obligation to support his wife merely because they are always quarreling. In my opinion, she has committed no matrimonial offence for which he could obtain a divorce, and the wife is, therefore, entitled to a decree.