KATHERINE ZEHRER, PLAINTIFF-RESPONDENT, v. CLIF-
FORD ZEHRER, DEFENDANT-APPELLANT.

Argued May 15, 1950—Decided June 19, 1950.

54

*Mr. Dougal Herr* argued the cause for the appellant (*Mr. Albert W. Seaman,* attorney).

*Mr. John C. Stockel* argued the cause for the respondent.

The opinion of the court was delivered by

Ackerson, J. This is an appeal from a judgment of the Appellate Division of the Superior Court (one judge dissenting) affirming a judgment of the Chancery Division of that court in a maintenance action pursuant to *R. S.* 2:50–39, in which the defendant was ordered to pay to his wife, the plaintiff, $50 weekly for her support (with counsel fees and costs) and the defendant's counterclaim for divorce on the ground of desertion was dismissed.

The parties were married in 1920 and lived together in Perth Amboy until 1944. On June 29th of that year the plaintiff left her husband and went to live with her sister. They have one child, a married son, with whom plaintiff now resides.

The complaint herein is grounded on the theory of constructive abandonment by the defendant because of his extreme cruelty alleged to consist principally in his adulterous conduct with other women, particularly with one Sophie Terpanick, and in telling plaintiff that he was having sexual relations

with this woman and that there was nothing plaintiff could do about it. In addition it is alleged that defendant openly and publicly consorted with his paramour in and about Perth Amboy and other public places; that he refused to cohabit with the plaintiff; refused to take his meals at home; refused to support her, and by reason of said acts of extreme cruelty her life and health were endangered and her life made one of such extreme discomfort and wretchedness as to incapacitate her to discharge her duties as a wife.

The defendant filed a general denial to these charges and counterclaimed for divorce on the ground of desertion.

Several questions are presented on this appeal. The defendant contends that his wife failed to prove a case entitling her to separate maintenance. It is argued that none of the allegations of misconduct were proven and that he has not refused nor neglected to provide for her. In particular, the husband maintains that there is no proof of his adultery with the other woman and that the plaintiff's testimony in this regard is without foundation and uncorroborated. It is further insisted that even if plaintiff can be believed, the evidence does not show extreme cruelty on the part of the husband.

Addressing ourselves to these questions, we note that the jurisdiction of the Chancery Division of the Superior Court to award separate maintenance is statutory and governed by *R. S.* 2 :50–39, derived from Section 26 of the Divorce Act (*P. L.* 1907, *c.* 216, *p.* 482). In an action brought pursuant to this statute, the wife must show the concurrence of two causes: (1) that the husband had abandoned or separated himself from her without justifiable cause, and (2) that he has refused or neglected to suitably maintain and provide for her. *Venere v. Venere,* 137 *N. J. Eq.* 526 (*E. & A.* 1945); *Danzi v. Danzi,* 142 *Id.* 662 (*E. & A.* 1948).

The abandonment contemplated is that of the husband, but where the husband is guilty of such cruel treatment that the wife is compelled to leave him, their separation is considered by the law as a constructive abandonment by him. *Fallon v. Fallon,* 111 *N. J. Eq.* 512, 515 (*E. & A.* 1932);

*Lister v. Lister,* 65 *Id.* 109 (*Ch.* 1903) ; affirmed, 66 *Id.* 434 (*E. & A.* 1903). It is generally held that the extreme cruelty which will justify the separation of the wife from her husband must be such cruel conduct as endangers the life or health of the wife, or renders her life of such extreme discomfort or wretchedness as to incapacitate her to discharge the duties of a wife, or that the conduct of the husband, if continued, would have brought about these conditions. Personal violence is not the only form of extreme cruelty which will entitle a wife to separate from her husband. *Taylor v. Taylor,* 73 *N. J. Eq.* 745, 748 (*E. & A.* 1907) ; *Fallon v. Fallon, supra; Stutz v. Stutz,* 139 *N. J. Eq.* 385 (*E. & A.* 1946) ; 42 *C. J. S.* (*Husband and Wife*), § 611b(2), *p.* 203 *el seq.*

■■ Whether the course of conduct pursued by a husband constitutes such extreme cruelty as to justify his wife in leaving him is necessarily dependent upon the particular facts in each case and the effect of the conduct complained of upon the health and well-being of the wife. *Fallon v. Fallon, supra, p.* 517. The question in each case is whether the effect of the alleged misconduct on the mental and physical condition of the aggrieved spouse is substantially deleterious, or if allowed to continue would reasonably have become so. The health, refinement and delicacy of the wife, background, education and surroundings are all elements to be considered. *Bonardi v. Bonardi,* 113 *N. J. Eq.* 25 (*E. & A.* 1933) ; *Fallon v. Fallon, supra, p.* 518.

■■ The wife must prove such extreme cruelty as would allow her to sue for divorce from bed and board, *Danzi v. Danzi, supra, p.* 671; *Cavileer v. Cavileer,* 94 *N. J. Eq.* 160 (*E. & A.* 1922). However, adultery committed by the husband anywhere is regarded as a constructive abandonment of his wife without justifiable cause within the meaning of the statute (*R. S.* 2:50–39) governing actions for support and maintenance. The rule is that the adultery of the husband, whether within or away from the home, justifies the wife in leaving and claiming an abandonment under that statute, although in actions for *divorce* based upon constructive deser-

tion, the adulterous act must have been committed within the home. *Suydam v. Suydam,* 79 *N. J. Eq.* 144, 146 (*Ch.* 1911); *Pierson v. Pierson,* 15 *N. J. Misc.* 117, 125 (*Ch.* 1937); *Taylor v. Taylor, supra, p.* 746; *Cavileer v. Cavileer, supra;* 1 *Herr, Marriage, Divorce and Separation,* § 214, *p.* 239; § 392, *p.* 510; § 393, *p.* 512; *cf. Lake v. Lake,* 65 *N. J. Eq.* 544, 545 (*Ch.* 1903); *Weigand v. Weigand,* 41 *Id.* 202, 208 (*Ch.* 1886).

The picture of the parties' marital life as drawn from the plaintiff's testimony is not a happy one. She testified that during most of her married life her husband habitually neglected her and was absent from their home practically every evening. Mrs. Zehrer said she noticed that when her husband came home evenings from Leonardo, where he worked as a foreman of iron-workers during the war years prior to their separation, he would have supper, then change his clothes and go out practically every night, leaving her alone, without explanation as to his whereabouts and answering her inquiries with regard thereto by saying it was none of her concern. She became suspicious and doubts concerning her husband's fidelity were further aroused early in 1944 when she heard rumors that he was going out with another woman (Sophie Terpanick). The plaintiff testified that she confronted her husband with these rumors and pleaded with him to give up this woman for the sake of their son who was in the army overseas. Thereupon, according to the plaintiff's testimony, her husband admitted he was having an affair with this other woman which had "gone all the way;" that he had sexual relations with her and would not give her up saying: "Kit [meaning plaintiff] you have been hurt enough and you'll only get hurt again." As further evidence of the husband's disregard for her feelings, she testified that he repeatedly watched a woman in the downstairs apartment taking a bath; that he did this by peeking through a hole in the floor; that he callously talked to his wife about his "Peeping Tom" activities and when she remonstrated he chided her with being jealous. She also said that from January, 1944, until she

left him in June of that year, her husband would not eat at home more than half of the time; that she never knew whether he was going to have his meals at home or elsewhere, and that they did not have normal relations during that period.

Finally, plaintiff left her husband on June 29, 1944. She testified that she had to leave because her "health was broken down completely" by her husband's conduct. This condition of her health is supported by other evidence and is given added credence by the defendant himself when he testified as follows:

"Q. Now, what about her mental condition, state of worry and nervousness during the time she lived with you and immediately prior to her leaving? A. Well, immediately prior to her leaving, that is I'll say four months back she was very nervous and always on edge around the house, always on edge, and I always told her, I says: 'If you don't stop it, don't stop worrying you will be down to Marlboro.' I says: 'You better cut it out.' I tried to straighten her out but I couldn't do it. * * *."

The defendant denied all of his wife's assertions bearing upon cruelty, infidelity and admissions thereof, and claimed he made *bona fide* attempts to effect a reconciliation. He explained his nocturnal absences as due to working overtime and union meetings and also denied ever having known Sophie Terpanick until January, 1945, seven months after the parties hereto had separated. He admitted, however, that ever since the last mentioned date he had been seeing her regularly once or twice a week and had escorted her frequently to "various taverns and various affairs." It is significant that, although this woman was in the court room during the trial, he did not call her as a witness.

The defendant testified that he had no knowledge that his wife was going to leave him until he came home on June 29, 1944, and found that she had gone. He admitted, however, that, although she had never before gone away without informing him, he made no effort to locate her until four days later. He also testified that he offered to effect a reconciliation, but his wife refused to return. Assuming for the moment that a *bona fide* offer would have required her accept-

ance, nevertheless, she testified that he offered her a separate room in his house but they were not to live as husband and wife. She further said that on several occasions she went to her husband and offered to return if he would give up the other woman and he refused to do so saying "it had gone too far." If this is true, then his offer to take her back while permitting her to remain under the impression that he was living in adultery is not one which she was obliged to accept. *Lister v. Lister, supra; Fred v. Fred,* 67 *N. J. Eq.* 495 (*Ch.* 1904); 1 *Herr, Marriage, Divorce and Separation,* § 226, *pp.* 260-262; 27 *Am. Jur.* (*Husband and Wife*), § 410, *p.* 18.

 Obviously a sharp factual dispute developed upon all the important issues and the trial judge was free to believe the testimony of the wife. *Mayerson v. Mayerson,* 107 *N. J. Eq.* 63 (*E. & A.* 1930). The findings of the lower court will not be lightly disturbed on appeal. The trial judge had the distinct advantage of observing the witnesses' demeanor and a better opportunity to judge their credibility than a reviewing court. *Rains v. Rains,* 127 *N. J. Eq.* 328 (*E. & A.* 1940). The trial court was impressed by the pliantiff's testimony and believing it, justly concluded, we think, that her poor health and nervous condition were due to her husband's admission of his infidelity, continual neglect, indifference and evident loss of love for her which, all taken together, made her life one of wretchedness and discomfort. The trial judge in the course of his opinion remarked that he was careful to observe the demeanor and conduct of the witnesses and that Mrs. Zehrer is a delicate and unoffending person whose testimony can be relied upon. This being a maintenance action and not one for divorce, corroboration of the plaintiff's testimony is not necessary and the relief can be granted on the testimony of the plaintiff alone if it is credible and satisfactory. *Gerhold v. Gerhold,* 109 *N. J. Eq.* 634 (*E. & A.* 1931); *Shore v. Shore,* 96 *Id.* 661, 667 (*E. & A.* 1924); *Pinkinson v. Pinkinson,* 92 *Id.* 669, 671 (*E. & A.* 1921); *Pierson v. Pierson, supra, p.* 122. We are not so much concerned in this type of action with the fact of the defendant's adulterous conduct as with

the mental effect which his admissions of it had upon his wife as relating to the issue of extreme cruelty.

We think that the trial court was justified in believing the evidence produced by the plaintiff and properly concluded that the defendant's conduct constituted such extreme cruelty as to legally justify his wife in separating herself from him. We see no reason to disturb these findings. The defendant's confessions of adultery; refusal to give up the woman with whom he led his wife to believe he was having such relations; his taunting behavior; persistent neglect, and indifference toward his wife's feelings constituted extreme cruelty. Indeed it is not difficult to perceive the deleterious effect of the described conduct upon the mind and body of a devoted spouse. Certainly, the mental agony, shock, humiliation and the aura of uncertainty and fear that normally would be produced by the admissions of a husband to his wife that he is living in adultery with another woman and his refusal in spite of his wife's pleadings, to give up his association with this other woman, are sufficient grounds for a finding of extreme cruelty and an abandonment by the husband within the meaning of the statute providing for support and maintenance. *Cf. Doty v. Doty,* 92 *N. J. Eq.* 660 (*E. & A.* 1921); 27 *Am. Jur.* (*Husband and Wife*), § 406, *pp.* 14-15; *Note:* 157 *A. L. R.* 634 *et seq.* The defendant's concession on the witness stand that he had been associating with Sophie Terpanick once or twice a week for the past three or four years during which he had escorted her to taverns and other places lends credence to the plaintiff's testimony.

Nor do we find any merit in defendant's contention that he has not neglected nor refused to support his wife. He maintains that she has supported herself out of a bank account standing in her name, composed of savings by her from household money given to her by him and that he has not been informed that this fund has been exhausted.

Only $14.26 remains in this account. At the time of the trial she was destitute and supported by her son. There are unpaid medical bills and she needs further medical care. The

defendant admits he has not contributed any money for her support since she left him in June, 1944, and the wife testified that he had contributed nothing for her support since March, 1944, approximately four months before she left him. There was a quarrel between the parties in March, 1944, when the defendant found the bank book representing the above mentioned account missing from the family safe. After the refusal of the wife to return the bank book, the husband gave her no more money. The plaintiff's departure several months later does not appear, however, to have been the result of this quarrel over the bank book, as defendant would have us believe, but rather because of his misconduct, which in all likelihood induced the wife to take possession of the bank book. The obligation of a husband to support his wife continues during the existence of the marital relationship. *Bonanno v. Bonanno,* 4 *N. J.* 268 (1950).

We conclude from the record before us, that the trial court was right in awarding the plaintiff separate maintenance and counsel fees and in dismissing defendant's counterclaim for divorce.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, WACHENFELD and ACKERSON—4.

*For reversal in part and affirmance in part*—Justices HEHER, OLIPHANT and BURLING—3.