22 N.J. Super. 407 (1952)
92 A.2d 71
SYLVIA GROSS, PLAINTIFF-RESPONDENT,
v.
SOL GROSS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1952.
Decided October 30, 1952.
*409 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Benjamin M. Ratner argued the cause for defendant-appellant and cross-respondent (Messrs. Ellenstein & Cooper attorneys).
Mr. Robert D. Grosman argued the cause for plaintiff-respondent and cross-appellant.
PER CURIAM.
These cross-appeals involve the allowance to the plaintiff-wife of $125 per week alimony and $1,000 counsel fee, pendente lite, by the advisory master sitting in the Chancery Division of this court.
The parties were married in 1934 and lived together with some interruption until April 7, 1952, when defendant-husband left plaintiff. Immediately thereafter he began sending her $60 weekly for her support and maintenance. Deeming this sum entirely inadequate to maintain her in accordance with her needs, her husband's means, and the standard on which they had been living, the wife instituted suit for separate maintenance on April 24, 1952. She applied for alimony pendente lite, counsel fees pendente lite, suit monies, costs and sheriff's and reference fees, basing the application upon her verified complaint. After hearing the argument of counsel and considering the complaint, answer, affidavits in support of and in opposition to the application, and defendant's detailed answers to interrogatories, the court on July 16, 1952 allowed plaintiff alimony and counsel fees pendente lite in the indicated amounts, together with costs and suit monies.
Counsel for defendant, without notice to plaintiff, on July 22, 1952 obtained an ex parte stay of the order. Plaintiff *410 moved to vacate the stay immediately after learning of its entry. Her motion was granted on July 25, 1952; the court however, temporarily stayed the execution of the July 16 order until the next sitting of the Appellate Division for motions, in order to give defendant an opportunity to apply to this court for a stay of that order. Defendant was directed to pay his wife $65 a week in the meantime. This was merely a "stop-gap" arrangement, apparently inserted after it had been indicated to the court that the wife would be left without any support whatsoever, and after defendant had volunteered to pay that sum each week. On August 18, 1952 the Appellate Division denied defendant's application to stay the execution of the July 16 order, and directed him to pay his wife $125 a week maintenance and $1,000 counsel fees pendente lite. Defendant now appeals from the July 16 order and plaintiff cross-appeals, requesting that the allowance be increased to $350 a week and the counsel fees to $7500.
Defendant claims that the Chancery Division erred in entering the pendente lite order because plaintiff failed to annex a supporting affidavit to her notice of motion for alimony and counsel fees pendente lite, pursuant to Rule 3:87-2. This argument not having been raised in the Chancery Division, it need not be considered here. It may be observed, however, that plaintiff filed a detailed complaint, setting forth her cause of action, her needs and defendant's means, and this complaint was verified by her affidavit, which incorporated all the allegations of the complaint by reference. Rule 3:11. Further, defendant filed an answer on the merits, setting up defenses; he also filed an affidavit in opposition to the motion, plaintiff filed a detailed affidavit in support of her motion, and thereafter defendant filed a supplemental affidavit in opposition. In addition, as has already been noted, the court also had before it a comprehensive set of interrogatories with defendant's answers thereto, in which he set forth in considerable detail facts relating to the marriage relation, household expenses, and his own *411 means. In light of the record, the court did not err in proceeding to consider the wife's application and in entering a pendente lite order.
It is next argued on behalf of defendant that there was an abuse of discretion in allowing plaintiff support pendente lite. The contention lacks merit. Plaintiff presents a prima facie case. Defendant, by answering affidavits and answers to the interrogatories, admits he left his wife on April 7, 1952. His leaving was without justification. Only a spouse's guilt of a matrimonial offense will justify a separation. Irwin v. Irwin, 88 N.J. Eq. 139, 140 (Ch. 1917); Germain v. Germain, 20 N.J. Super. 565, 573 (Ch. Div. 1952). The only reasons assigned by defendant for leaving his wife are that they constantly quarreled about petty matters, most of the arguments being precipitated by plaintiff; she always tried to exercise her will over his, and when he refused to do as she wanted she would go into tantrums, scream, yell and on one occasion even threatened to commit suicide; she was indifferent to his health; and, finally, her actions had reached a point where he could no longer physically or mentally continue to take her abuse and nagging, so that it became necessary for him to leave. These alleged actions on the part of the wife do not constitute a matrimonial offense.
The fact that defendant voluntarily sends his wife $60 a week does not, under the circumstances, amount to adequate support, within the meaning of the cases which require that such support be consistent with the wife's needs, the husband's means, the station in life of the parties, and the standard on which they had been accustomed to live. Bonanno v. Bonanno, 4 N.J. 268 (1950), and cf. Dinnebeil v. Dinnebeil, 109 N.J. Eq. 594 (E. & A. 1932); Dietrick v. Dietrick, 88 N.J. Eq. 560 (E. & A. 1918).
It is uncontroverted that defendant's income in 1949 was $40,643, income from securities and investments totalling over $25,000; that in 1950 he received $61,753, of which over $30,000 came from securities and investments; and *412 that his income for 1951 was $50,338. He estimates that his total income for the year 1952, before taxes, will be only $18,000, because he is unable to work by reason of his health. In view of the fact that he admittedly has over $300,000 in assets, consisting almost entirely of securities, it is reasonable to anticipate that his income from securities and investments alone will exceed $25,000 in 1952. Sale of certain radio stock has already netted him close to $30,000 profit, and though it is argued that this is not income, but a capital gain, the figure may not be disregarded in the total picture.
A word about defendant's claim that he can no longer work. He states that he is suffering from migratory throm-bo-phlebitis of both legs, which condition is allegedly a precursor of Berger's disease, and is also suffering from multiple neuro-fibromata of the entire body. His physical condition dates back to the mid-1930's and did not incapacitate him from useful employment until now. Defendant produces no medical affidavit to support his claim that he can no longer work, or that he is in any way incapacitated. Defendant may not, when faced with an action for separate maintenance, fall back upon his alleged physical condition as an excuse for not continuing his very gainful employment and thus depressing his income. His sudden inability to work appears to be nothing more than an improvisation.
Defendant would have the court believe that it has cost him only slightly in excess of $7,000 a year, for the past three years, to support plaintiff and himself. The picture developed in the record shows that the standard of living was greatly in excess of this amount. For example, he bought himself a new and expensive automobile each year, the latest model being a 1951 Cadillac. He bought his wife a Cadillac car for her own use in 1949. In 1950 he bought her a ten-carat diamond ring for about $8,000 and a Persian broadtail coat for $500. In 1951 he bought her a mink jacket for which he paid about $1,500. He and his wife spent an extended vacation in Florida in 1949 and 1950, and in 1951 *413 they went to California for five weeks. The couple ate out two and three times a week at expensive restaurants. Plaintiff estimates the living expenses during recent years as being $400-450 a week.
It is not for defendant to determine how cheaply his wife might live by offering her only $60 a week. Acheson v. Acheson, 24 N.J. Misc. 133 (Ch. 1946). The wife is not to be required to change her mode of living merely because the husband has quit the marital home. As was observed by Vice-Chancellor Backes in Hebble v. Hebble, 99 N.J. Eq. 53, 56 (Ch. 1926), affirmed 99 N.J. Eq. 885 (E. & A. 1926):
"* * * She is living in the home he provided, and only in the style and manner that she would be living if he were living with her, and to that she is entitled. His income and their station in life justifies her conduct. She is not called upon to cheapen her course of living unless his means require it, and that they do not. * * *"
Considering all the circumstances relating to plaintiff's needs, defendant's means, and the living standard pursued by the two when they lived together, as revealed by defendant's answers to the interrogatories as well as by the affidavits on file, alimony pendente lite should have been fixed at the sum of $175 a week. This will enable plaintiff to pay for all of the expenses connected with maintaining the marital home defendant has abandoned, in the manner to which he accustomed her, as well as to pay for her own personal expenses.
The allowance of $1,000 counsel fee pendente lite was reasonable and will not be disturbed. Defendant urges that this allowance should be modified because plaintiff's attorney filed no affidavit of services and there was therefore no legal basis upon which the allowance could have been made. The immediate answer is that the lack of an affidavit of services was not raised in the court below. Moreover, counsel fees pendente lite are allowed prospectively; no affidavit of services is required. An allowance of this nature is based on defendant's means, the experience and standing of counsel, the vigor *414 with which the cause is being prosecuted or defended by his adversary, and the amount and quality of the services he is likely to be called upon to render. Cf. Geismar v. Geismar, 125 N.J. Eq. 44 (E. & A. 1939) and Hopson v. Hopson, 95 N.J. Eq. 540 (Ch. 1924), in which the court quotes with approval from Bishop on Marriage, Divorce and Separation:
"Natural justice and the policy of the law alike demand that in any litigation between husband and wife they shall have equal facilities for presenting their case before the tribunal. This requires that they shall have equal command of funds. So that if she is without means, the law having vested the acquisition of the two in him, he should be compelled to furnish them to her, to an extent rendering her his equal in the suit."
The order of the Chancery Division will be modified to require defendant to pay plaintiff $175 per week, commencing June 16, 1952, the date of the order. As so modified, the order is affirmed.