**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5315-15T1

F.S.,

    Plaintiff-Appellant,

v.

R.A.L.,

    Defendant-Respondent.

_____

Submitted May 14, 2018 — Decided July 30, 2018

Before Judges Ostrer and Whipple.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Camden County,
Docket No. FM-04-1177-14.

F.S., appellant pro se.

David M. Lipshutz, attorney for respondent.

PER CURIAM

    Plaintiff-husband, F.S.[1], appeals from a June 29, 2016 entry

of Final Judgment of Divorce after a lengthy trial. The Honorable

---

[1] Because there are allegations of abuse and neglect as well
mental health issues, we use initials to protect the privacy of
the parties.

Mary Beth Kramer, J.S.C., rendered her thorough, well-supported decision from the bench on June 22, 2016, and we affirm.

Plaintiff and defendant-wife, R.A.L., met in Brazil in 2002 and married on June 27, 2007. They have one child together, B.S. Plaintiff filed a complaint for divorce on April 12, 2014. A trial was conducted over twenty days throughout 2015 and 2016. The parties had previously litigated other Family Part issues, including restraining orders under the FD docket, matters with the Division of Child Protection and Permanency (the Division) under the FN docket, and numerous other motions before Judge Kramer. At the heart of this trial were plaintiff's concerns regarding defendant's mental health and ability to co-parent their child.

During the trial, the judge heard from numerous witnesses including extensive testimony from plaintiff and defendant. Of significance, the judge heard testimony from a joint custody expert, Dr. Gregory Joseph, who also supplied a report. He performed psychological testing, interviewed the parties and the child, visited their respective residences, and observed them interact with B.S. Both parties stipulated to Dr. Joseph's report.

Dr. Joseph opined defendant suffered from a delusional disorder but not from schizophrenia. He found apart from the delusions, her "functioning was not markedly impaired and the behavior was not obviously bizarre or odd." Dr. Joseph determined

defendant experienced numerous delusions centered on the unfounded suspicion that plaintiff sexually abused their child. In addition, defendant had other unfounded delusions, including: plaintiff was sexually abusing his daughter from a prior marriage; that daughter was sexually abusing B.S.; plaintiff was trying to poison defendant and B.S.; plaintiff murdered his ex-wife; plaintiff was going to harm her and/or B.S.; plaintiff was taking children to the attic to molest them; and plaintiff had been gaslighting her.

The judge considered Dr. Joseph's opinion and agreed with him because the record demonstrated after three years of extensive investigations by the Division and multiple evaluations, there was no evidence that these allegations were true or any reasonable basis to believe or suspect them. The court noted while defendant eventually recognized some of her delusions were false, she steadfastly continued to believe the others. The court expressed concern that defendant remained defiant in her delusions and lacked understanding about how these allegations impacted others. However, notwithstanding these concerns, the judge found defendant was not negatively impacting B.S.'s perception of plaintiff and was not the cause of B.S.'s behavioral problems.

At the conclusion of the trial, Judge Kramer addressed all relevant issues and ordered plaintiff to pay limited duration alimony of $250 per week for nine months from August 1, 2016,

until May 1, 2017, and required plaintiff to maintain a $25,000 life insurance policy to secure the alimony. The judge also required each party to be responsible for their own medical insurance coverage. Addressing equitable distribution, the judge awarded defendant $38,277 from plaintiff's retirement account, pursuant to a Qualified Domestic Relations Order, and fifty percent of the coverture of plaintiff's company stock acquired during the marriage. Both parties retained their own bank accounts and vehicles and were responsible for their individual debts. Plaintiff retained the marital residence.

The judge gave sole legal custody of B.S. to plaintiff and designated him parent of primary residence. The judge ordered a schedule for defendant to enjoy parenting time with B.S. and addressed holiday and vacation schedules. The judge also ordered the child to participate in individual counseling, defendant to engage in individual therapy, the parties to attend co-parenting counseling, and defendant to pay child support of $184 per week.

Plaintiff appealed. On appeal, his arguments largely center on defendant's mental illness. He maintains the court erred by permitting the trial to proceed because defendant was severely mentally impaired and the court should have appointed a guardian ad litem (GAL). He asserts the court erred in accepting defendant's testimony and should not have authorized defendant's

unsupervised parenting with B.S. Plaintiff contends the court erred by dismissing his tort claim against defendant and in its conclusions regarding alimony, equitable distribution, and counsel fees. We disagree.

"Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court fact-finding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). We defer to a trial court's findings "unless it is determined that they went so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citation omitted).

At the outset, it is unclear what relief plaintiff seeks regarding a GAL. Plaintiff argues because the judge was on notice that defendant was suffering from a mental illness, she should have sua sponte appointed a GAL to represent defendant's interests. Plaintiff did not raise the issue below and now argues "[f]rom a practical view it might [be] more appropriate to let the divorce stand and just insist that all further legal proceeding[s] with [defendant] require a [GAL]." Because we do not give advisory opinions, we reject this suggestion. Furthermore, plaintiff has not explained what difference the appointment of a GAL would have made.

Pursuant to Rule 4:86-4(d):

At any time prior to entry of judgment, <u>where special circumstances come to the attention of the court by formal motion or otherwise</u>, a guardian ad litem may, in addition to counsel, be appointed to evaluate the best interests of the alleged incapacitated person and to present that evaluation to the court.

[(Emphasis added).]

Here, there was no motion, each party was represented by a lawyer, and the court had the benefit of Dr. Joseph's evaluation and testimony. Plaintiff has not explained what circumstances would have required the sua sponte exercise of the court's discretion.

Plaintiff next contends the court erred in accepting defendant's testimony. We reject this argument. The judge determined defendant was competent and understood her actions, except for certain delusions she maintained. The judge did not credit defendant's delusions. To the contrary, the judge repeatedly rejected defendant's delusions and considered them thoroughly in the context of her ability to continue parenting B.S.

When the judge ordered defendant to have unsupervised parenting time over plaintiff's objection, the judge articulated reasons for the custody determination and addressed the N.J.S.A.

9:2-4(c)[2] factors. Conclusions of the Family Part regarding child custody are "entitled to great weight and will not be lightly disturbed on appeal." Sheehan v. Sheehan, 51 N.J. Super. 276, 295 (App. Div. 1958) (citing Zehrer v. Zehrer, 5 N.J. 53 (1950)). "The touchstone for all custody determinations has always been 'the best interest of the child.'" Faucett v. Vasquez, 411 N.J. Super.

---

[2] In making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

[N.J.S.A. 9:2-4(c).]

108, 118 (App. Div. 2009) (quoting <u>Kinsella v. Kinsella</u>, 150 N.J. 276, 317 (1997)).

The judge awarded plaintiff sole legal custody and granted defendant unsupervised visitation on alternative weekends and Wednesday evenings. Plaintiff contends defendant is mentally ill and will harm B.S. by planting her delusions in his head.

Judge Kramer addressed these contentions and concluded they were unproven. The judge relied largely on the testimony of Dr. Joseph, who opined defendant did suffer from delusional disorder, but her "functioning was not markedly impaired and the behavior was not obviously bizarre or odd."

At trial, plaintiff presented Dr. Colleen Sherman, the child's therapist, to attest to plaintiff's belief that defendant was harming B.S. The court, in its oral opinion, noted Dr. Sherman expressed a belief that defendant was negatively influencing B.S.'s perception of plaintiff, but her conclusions lacked evidentiary support because she drew those conclusions almost entirely from information received from plaintiff. As such, there is sufficient credible evidence to support the judge's custody findings, and we discern no reason to disturb them.

The judge also declined to award plaintiff damages for his Tevis[3] claim for intentional inflection of emotional distress. The judge reasoned plaintiff could not maintain such a claim because defendant's false allegations of sexual assault resulted from her mental health issues, and accordingly, the allegations were not intentional or reckless.

In order to prove intentional infliction of emotional distress, plaintiff was required to show:

> (1) defendant acted intentionally; (2) defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community; (3) defendant's actions proximately caused him emotional distress; and (4) the emotional distress was so severe that no reasonable person could be expected to endure it.
>
> [Segal v. Lynch, 413 N.J. Super. 171, 191 (App. Div. 2010) (quoting Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988)).]

As the judge concluded, plaintiff cannot recover when defendant did not act intentionally. Dr. Joseph opined defendant suffered from delusional disorder regarding her belief that plaintiff sexually assaulted B.S. Plaintiff's claim fails on the intent element because defendant suffers from a delusional disorder. See American Psychiatric Association, The Diagnostic

---

[3] Tevis v. Tevis, 79 N.J. 422 (1979).

and Statistical Manual of Mental Disorders § 297.1 (5th ed. 2013) (defining delusion as "[a] false belief based on incorrect inference about external reality that is firmly held despite what almost everyone else believes and despite what constitutes incontrovertible and obvious proof or evidence to the contrary."). Accordingly, defendant cannot act intentionally to inflect emotional distress if she truly believes this underlying reality to be true.

Plaintiff further argues the judge incorrectly awarded defendant alimony, a proportionate share of his 401k, and counsel fees. Regarding alimony, plaintiff maintains the court did not consider the parties only lived together for thirty-two months because defendant was studying abroad. As to the division of marital assets, he argues it was error to reduce the allocation of his 401k by fifteen percent, when he spent over $54,000 on defendant's education. Lastly, plaintiff contends the Family Part erred in requiring him to pay his own counsel fees. Because the judge's decision is amply supported by credible evidence in the record, we affirm.

Regarding alimony, despite plaintiff's contention, the judge determined the length of the marriage was six years and ten months based on the date of marriage and when defendant filed a complaint for a temporary restraining order. The court considered it

immaterial that the parties did not live together until 2010 because the testimony indicated that defendant remained in Brazil to complete her education pursuant to an agreement between the parties wherein she received support and encouragement from plaintiff. As such, the court properly awarded defendant limited duration alimony of $250 per week for nine months.

Regarding equitable distribution, the judge utilized the factors set forth in N.J.S.A. 2A:34.23-1 and <u>Rothman v. Rothman</u>, 65 N.J. 219 (1974), to distribute plaintiff's 401k. The judge made requisite findings regarding each factor. On appeal, plaintiff contends the judge did not consider the amount he paid towards defendant's education expenses. However, the record clearly reflects the judge noted, in her findings, that plaintiff made significant contributions to defendant's education and earning power and gave those contributions requisite weight.

Lastly, plaintiff asserts he should not be responsible to pay his counsel fees because defendant's mental illness and false allegations caused the divorce proceeding to continue for such a long period of time. In her oral decision, the judge discussed each element required under <u>Rule</u> 5:3-5(c) and concluded each party is responsible for their own counsel fees and costs. She noted the parties became so invested in their positions that they lost sight of any middle ground or any potential avenues to bring this

11

matter to an amicable resolution.  The court found both parties' actions elongated the proceedings.

All additional arguments introduced by plaintiff are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION