THE STATE, DEFENDANT IN ERROR, v. SIDNEY S. BLOCK, PLAINTIFF IN ERROR.

Submitted October 15, 1937—Decided January 13, 1938.

Before BROGAN, CHIEF JUSTICE, and Justices TRENCHARD and PARKER.

For the plaintiff in error, *Collins & Corbin* (*Edward A. Markley* and *John F. Leonard,* of counsel).

For the state, *Daniel O'Regan,* prosecutor of the Pleas, and *Frank G. Schlosser* and *William T. Cahill,* assistant prosecutors.

The opinion of the court was delivered by

PARKER, J. The defendant below was convicted on an indictment for receiving stolen goods and brings this writ of error. The case is submitted on briefs, which are voluminous, especially that for the plaintiff in error. The case is before us on strict writ of error and a certificate of the entire record pursuant to section 136 of the Criminal Procedure act. There are eleven assignments of error and thirty-five causes for reversal, which are argued under twelve points in the brief.

The first point made is that there was error in directing a verdict for the state on a special plea of *autrefois acquit.*

The situation is as follows: There had been a previous trial at which the jury reported a disagreement and were discharged. At that previous trial there had been an amendment of the indictment. The original indictment was for receiving ten rugs of the value of $55 each, knowing them to have been stolen. On the first trial the state's proof indicated that though ten rugs had been stolen, only five had been received. When the state rested, the prosecutor moved an amendment of the indictment to conform to the proof, and this amendment was ordered, apparently without objection then or at any time. It does not seem to be urged even now that there was error in making the amendment, though we prefer not to pass on that point as it is not before us. The case was submitted to the jury on the basis of receiving five rugs instead of ten; and the jury, later reporting that they could not agree, were discharged. This is the basis of the plea of *autrefois acquit.* The plea seems to intimate that there was a verdict of not guilty as to part of the ten rugs charged in the indictment, but we do not find any indication of this in the case. On the contrary, the only question submitted to the jury after the amendment was whether the defendant was guilty of receiving five rugs as charged by the

amended indictment. In connection with this matter it is intimated that it was error to discharge the jury after they had reported they were unable to agree. But it is elementary that this is a matter discretionary with the court and we find nothing to indicate that that discretion was in any way abused. Coming now to the precise point made under this heading, the case shows that there was a replication to the plea of *autrefois acquit,* the court empanelled a jury to try it, it was tried by that jury, and the court directed a verdict for the state, negativing the plea. This direction was manifestly proper as there was nothing in the proofs to sustain it. *State* v. *Cooper,* 96 *N. J. L.* 376.

The second point is that "the trial court erred in that an impartial jury was not drawn for the trial of the indictment because the panel of jurors from which said jury was drawn was in the court room and heard the trial of the plea of *autrefois acquit* wherein the trial court directed a verdict against the defendant."

The substance of the point appears to be this: The jury drawn for the trial on the plea of *autrefois acquit* was drawn from the general panel, which was present in court. After the disposition of that plea, the question was whether the next jury to be drawn for the general trial of the cause should be selected from the entire general panel or whether the twelve jurors who had already served should be eliminated therefrom before a new jury should be drawn. The case shows that both sides agreed to eliminate these twelve, which was done, and they were sent out of the room. Then the jury was drawn from the remainder of the general panel without objection or challenge because of the exclusion of the first twelve. Plainly, the plaintiff in error is not in a position now to allege error in this regard, because there was no objection at the time, no challenge to the array, and no exception. Under section 136 there need not be an exception but there must be a ruling. *State* v. *Mosley,* 102 *N. J. L.* 94 (at *p.* 98). The second point is therefore without substance.

The third point reads as follows: "The trial court erroneously refused to grant the defendant's motion for a direction of a verdict of acquittal on the grounds urged in support thereof."

A number of grounds are stated in the brief but we find only four of them advanced at the trial. The first is that guilty knowledge was conclusively disproved. This is without substantial support in the evidence. The second is a repetition of the matters considered on the plea of *autrefois acquit*. This has already been disposed of on the merits. The third repeats the second on the constitutional theory of former jeopardy. But we think it is elementary that a mistrial in a case of this kind does not involve the element of former jeopardy. *State* v. *Hall*, 9 *N. J. L.* 256; *Smith & Bennett* v. *State*, 41 *Id.* 598. The fourth is that the court was in error in ruling that the state was entitled to a jury to try the *autrefois acquit* defense. If there was error, which we do not concede, that error was manifestly harmless because the court directed a verdict.

The fourth point, which takes up some seventeen pages of the brief, consists of an argument on weight of evidence specified as a cause of reversal under the statute. Our examination of the evidence satisfies us that the jury were warranted in finding that the defendant had such facts before him as would satisfy any reasonable man that the rugs were stolen rugs. His business was that of auctioneer and appraiser. The rugs were admitted or conclusively proved to have been stolen. They were stored in the annex of a small house in Bayonne. The evidence indicates that the defendant visited this house twice to examine the rugs. There was evidence that, in the course of negotiations for them, he said that the rugs were "red hot" and would have to be buffed and dyed before resale. He agreed to buy a number of rugs worth $50 each for $10 each, and the evidence indicated that the ten rugs were delivered at defendant's home after nine o'clock at night. We need not consider the testimony further. Manifestly, there was not only a fair case for the jury with regard to his guilty knowledge

but, as we read the evidence, their judgment was fully justified.

The fifth point alleges certain errors in the charge:

(a) That in describing the indictment the judge described it in its amended and not in its original form. This, of course, goes back to the act of amendment but, as already pointed out, the amendment was at the first trial and there was no objection to it then or at any time before the second trial began.

(b) That the court charged the crime in the language of section 166 of the Crimes act (*Comp. Stat., p.* 1795) without alluding to chapter 187 of *Pamph. L.* 1928 (*p.* 356). This re-enacts section 166 except that it makes the crime a "high misdemeanor"—and then goes on to prescribe what circumstances will justify a conviction unless defendant proves one or more of four facts (1) gift, (2) reasonable value paid, (3) knowledge that seller was a regular dealer, (4) contemporaneous notice to the police. If there was error here it was all in favor of the defendant. The court does not seem to have charged the jury with reference to the presumption arising from mere possession as laid down in that act; and the sentence imposed was the maximum sentence for an ordinary misdemeanor, and not the maximum sentence for a high misdemeanor as contemplated by the language of the act of 1928.

(c) That the court should have cautioned the jury more fully on the credibility of witnesses convicted of crime. The objection apparently is not to what the court said, but what the court did not say. If the defendant wished more said than had been said, there should have been a request to that effect.

(d) That the court made certain remarks to the jury that the case was an important one, &c. We do not see any error in this regard. *State* v. *Lieberman,* 80 *N. J. L.* 506, 509.

(e) That the court misquoted the testimony of one of the witnesses. The simple answer to this is, that if there was any misquotation, it was not made in any form binding on the jury, but that, on the contrary, the court said to the jury

that it was their function to remember what the testimony was and to act according to their recollection of it.

Point 6 relates to certain testimony by one Rupprecht. We do not find any objection to this at the trial.

Point 7 is in two sub-divisions:

(a) Allowing certain rugs to be marked for identification. We have never understood that the mere marking of any paper or object for identification could be considered as erroneous.

(b) Certain questions to the witness Rupprecht. One of them was objected to and not answered. Then the prosecutor made an explanation and asked the question again. This time there was no objection, and consequently there was no ruling by the court. As to the questions to the witness Wilson and the witness Lepore and on the cross-examination of the defendant we find no objection to any of them.

Point 8. The exclusion of a question to the witness Lepore on cross-examination as to whether he had been convicted as a disorderly person. This question was evidently intended as an impeachment of the credibility of the witness, but conviction as a disorderly person is not a conviction of crime, and in *Huff* v. *Goddard Co.*, 106 *N. J. L.* 19, this court reversed a judgment for allowing a question to the witness with regard to having been fined for reckless driving, an offense of the same general type of disorderly conduct. The question to Lepore was properly excluded.

Point 9 in the brief reads as follows: "The plaintiff in error suffered manifest wrong or injury in that the assistant prosecutor, the state's attorney, created a situation prejudicial to the plaintiff in error by injecting into the trial elements which had, and were designed to have, the effect of prejudicing the rights of the plaintiff in error."

Under this point the brief contains various extracts from the stenographic transcript showing short colloquies and parts of the testimony, and the claim as made in the brief is that "an examination of the above excerpts shows that an injustice was done to the defendant and that he suffered manifest wrong or injury by the method in which the trial

was conducted by the state's attorney." We have gone over the various matters developed under this point and find that they merely exhibit the general situation of a defendant's counsel making no objection at the time, and, after conviction, invoking for reversal the reception *sub silentio* of testimony to which he should have objected in the first instance:

(a) The witness called but does not appear; colloquy between counsel and court; no objection of any kind; state rests.

(b) Question was objected to and withdrawn unanswered.

(c) Another question answered without objection.

(d) The question objected to but no ground of objection stated: the objection consequently nugatory.

(e) Question answered without objection.

(f) Question not answered.

(g) Termination of cross-examination of the defendant. This relates to matters considered under point 11, below.

Point 10 is that the court refused to admit into the evidence two scrap books of advertising clippings produced by the defendant, counsel saying that they represented defendant's business. The books were offered in evidence without verification of any kind. There was no error in excluding them. Apart from any attempt to prove them as genuine, they were merely self-serving declarations and incompetent under elementary rules.

Point 11. There was a motion for a mistrial on two grounds, the first being that the prosecuting attorney at the conclusion of the cross-examination of the defendant asked him whether it was a fact that he never told any police officer "where that drop was in Bayonne," &c. The defendant asked what was meant by a "drop" and was cross-examined further as to whether he really did not know, but insisted that he did not. Whereupon he was dismissed with the remark that "it is refreshing in these days to see some one of mature years who doesn't know any of the criminal argot." As to this, we think that on proper application the court might well have reproved counsel for the remark, and instructed

the jury to disregard it; but we do not think that in the absence of such an application it was of such consequence as to call for the withdrawal of a juror.

The second ground of the motion for mistrial was that a religious element had been injected into the case by the prosecution. We think this claim is without substance. The defendant undertook to explain the delivery of the rugs at night on grounds connected with a Jewish holiday season and was cross-examined on that, and properly so. The judge in his charge dealt properly with the race question and pointed out, among other things, that the defendant "comes into court with an unblemished reputation." We think there was no manifest wrong or injury in this regard.

The twelfth and final point is that the jury before returning its verdict came back into court and asked instructions about recommending the defendant to the mercy of the court. The judge replied that they could so recommend if desired, but that it would not be binding on the court, and that if there was a verdict of guilty, the court would exercise its judgment in regard to the matter of sentence. The jury then retired for the second time and, as indicated by the record, returned with the general verdict of guilty. The instruction was a proper one. A similar instruction was specifically approved in *State* v. *Overton*, 85 *N. J. L.* 287 (at *p.* 296). It is now argued that the sentence "was excessive and illegal as the trial court did not abide by the jury's recommendation of mercy, and that the sentence as passed upon the defendant reveals manifest wrong or injury and therefore the record should be remanded to the trial court to render such a sentence as should have been rendered in view of the jury's recommendation of mercy."

The first answer seems to be that the recommendation of mercy was withdrawn by the jury; the second, that assuming such a recommendation, the extent of the sentence was a matter for the discretion of the trial court within the limits imposed by the statute.

No harmful error appearing, the judgment of conviction will be affirmed.