MINNIE SCULLIN *vs.* JAMES P. SCULLIN.

JUNE 6, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

92

Moss, J. This case is before us on the petitioner's exception to the decision of the superior court denying her petition for a divorce from the bond of marriage, such petition being based on the grounds of extreme cruelty and of neglect to provide. The justice before whom the case was heard upon its merits found, at the end of the hearing, that the petitioner had not proved, by a preponderance of the evidence, that the respondent was guilty of either of the grounds charged against him or that she had demeaned herself as a good and faithful wife.

At the time when the petition was brought, the petitioner was sixty years old and the respondent was sixty-four. They were married on May 10, 1900. On August 10, 1920, she filed a petition against him for a divorce from bed and board, on the ground of extreme cruelty and that of gross misbehavior and wickedness. She was successful in that case and the parties lived separate and apart for five years thereafter. At the end of that period they became reconciled, and thereafter lived together until a very short time before the present petition was filed, which was on August 4, 1939.

Soon after they had begun to live together again they bought a piece of real estate, including a two-family house,

most of the money used for the purchase being borrowed upon mortgages on the property, and at least a part of the rest being supplied by the petitioner. The title was taken in their names as joint tenants and they remodeled the house, so that it contained three apartments besides the rooms in which they lived. The wife, with the assistance of the husband, operated the house as an apartment house down to the time of the filing of the present petition.

Evidently they had a good many quarrels from time to time, but the evidence of anything in the nature of actual physical cruelty by the husband to the wife was very meager and indefinite, except as to one occasion a very short time before this petition was filed. As to cruelty of the nature of mental cruelty there was no convincing evidence that anything of that sort resulted in any serious injury to her health. *Seidman* v. *Seidman,* 53 R. I. 96, 97, 164 A. 194; *Meegan* v. *Meegan,* 60 R. I. 131, 197 A. 221; *Grimes* v. *Grimes,* 61 R. I. 198, 200 A. 442.

The occasion above referred to was that of a quarrel between the parties which occurred one morning about two or three weeks before this petition was filed. The testimony of the wife as to this quarrel was that after the table was all set for breakfast and she was about to sit down to eat, he started to pour the coffee from one cup to another and she asked him to let her have her cup; that he refused and used such irritating language to her that she lost her temper and threw at him something which she had in her hand and which other evidence showed was a frying pan; and that "he grabbed me by the throat, and before it was all over he had a cut on his head."

Other evidence, which was uncontradicted, showed that the injury to the respondent's head on that occasion was so serious that several stitches had to be taken in his scalp. The respondent testified that on that occasion his wife struck him with the frying pan and that he did not then

or ever take her by the throat and that he never struck her. He is only five feet tall and weighs about 114 pounds, while she is about the same height and weighs much more than he.

After considering all the evidence in the case, we cannot properly say that the trial justice was clearly wrong in finding that the petitioner had not proved by a preponderance of the evidence that the respondent had been guilty of extreme cruelty to her or that she had come into court "with clean hands".

Such conduct as that of which the petitioner was admittedly guilty in the quarrel at the breakfast table was sufficient to support a finding that she had not come into court "with clean hands"; and it is well settled that such conduct by a petitioner toward a respondent should be given weight in deciding whether a petition for a divorce should be granted. *Hurvitz* v. *Hurvitz*, 44 R. I. 478; 119 A. 58; *Grimes* v. *Grimes, supra; Puhacz* v. *Puhacz*, 55 R. I. 306, 307, 180 A. 377.

The petitioner strongly relies, before us, on the contention that upon her previous petition against the respondent she obtained a divorce from bed and board on the grounds of extreme cruelty and gross misbehavior; that she afterwards condoned these grounds; but that his later conduct was such that even though it would not of itself constitute extreme cruelty, it would remove the bar of condonation and give her the right to a divorce by reason of the same extreme cruelty that was one of the grounds upon which she was granted the previous limited divorce.

This is an ingenious contention; but in the first place no case has been cited to us, nor have we found any, in which a divorce has been granted by reason of a previously condoned ground, when the condonation had continued for more than fourteen years, as in the instant case. In the second place, we see no reason why conduct on the part of

a wife toward her husband, which should prevent her from getting a divorce from him on the ground of recent extreme cruelty, should not have the same effect where the cruelty relied on was condoned and the condonation was later annulled.

Therefore, we are of the opinion that there is no merit in this contention and that the trial justice did not err in refusing to grant the petitioner a divorce on the ground of extreme cruelty.

As to the ground of nonsupport, the evidence is somewhat conflicting. But there is credible evidence that until about ten years ago the respondent worked regularly and assisted in paying family expenses; that until quite recently he used to do considerable work in taking care of the joint property; and that he still was doing some such work down to the time of the filing of this petition, as much as his health would permit.

There is uncontradicted medical testimony that he has a weak heart, high blood pressure, a hernia and a very severe case of hemorrhoids. The medical witness also said that he did not believe that the respondent could "do a day's work" and that that disability, to the witness's knowledge, must have existed over three years. The petitioner testified that she thought that the respondent was able to work; but he testified that, for some years before this petition was filed, he had been unable, because of his health, to get any remunerative work to do:

As to this ground, as defined by G. L. 1938, chap. 416, § 2, the question for the trial justice to decide was whether the evidence showed, by a fair preponderance, that there was "neglect and refusal, for the period of at least one year next before the filing of the petition, on the part of the husband to provide necessaries for the subsistence of his wife, the husband being of sufficient ability." After

considering the evidence we are of the opinion that the trial justice was not clearly wrong in finding that the petitioner had not proved the ground of nonsupport.

The petitioner's exception is overruled, and the case is remitted to the superior court.

*Thomas L. Carty,* for petitioner.

*Francis R. Foley,* for respondent.