34 N.J. Super. 197 (1955)
111 A.2d 793
MABEL V. WELCH, PLAINTIFF,
v.
HAROLD F. WELCH, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 17, 1955.
*198 Mr. Jack Pincus, attorney for plaintiff.
No appearance for defendant.
The opinion of the court was delivered by CONFORD, J.S.C.
This is an action for divorce based upon grounds of extreme cruelty. I do not find the cause of action sustained by the proofs adduced.
The parties were married in 1946 and had cohabited continuously, except for two or three brief intervals, until he left at her insistence in August 1954, under circumstances referred to hereinafter. There are two young children.
From so much of the testimony in this matter that appears credible it may be concluded that the difficulties of the parties stem substantially from a combination of excessive drinking by the defendant and a state of chronic anxiety and nervousness of the plaintiff. While the nervousness may have been aggravated by the husband's lapses from sobriety and the ensuing quarrels, the physician who has attended plaintiff since 1950 and testified on her behalf was not able unqualifiedly to lay her condition to the defendant's conduct, or, indeed, to any other specific cause. He did assert that she was disturbed, until reassured by him, over occasional *199 threats by the husband to have her committed for derangement. These occurred two or three years ago, and apparently took place only when the defendant was engaged in one of his altercations with plaintiff. There is no indication that the plaintiff was in distress over such threats for some time prior to the separation in August, 1954.
Aside from the matters related, the cause pleaded in the complaint is substantiated only by two incidents of claimed physical assault, one in 1946 and the other in 1948. On the first occasion, when the parties were having their first marital separation shortly after the marriage, defendant came to the home of plaintiff's mother, where she was staying, and, in her absence, occupied her bed. Upon her arrival and attempt to evict him from the bed, he gagged her with his hand and forced his knee against her abdomen to prevent her calling her mother to her assistance. In 1948, in a scuffle over possession of a purse, she fell down a flight of stairs. She says he pushed her. Plaintiff's testimony concerning the first of these incidents is competently corroborated, but not as to the second. These brushes seem to me isolated events, not reflective of a brutal or cruel attitude toward plaintiff on the part of the defendant.
Plaintiff testified there was no physical abuse of her by the defendant between the 1948 incident and August 1954, when she asserts he struck her during the course of an argument over her going out one evening with a girl friend. Since the latter occurrence transpired during the six-month period preceding the filing of the complaint, it cannot inhere in the cause pleaded, N.J.S. 2A:34-2, but might, at most, be taken as giving color to the earlier offenses or to defeat the condonation thereof arising from the cohabitation of the parties. Yorn v. Yorn, 138 N.J. Eq. 608, 609 (E. & A. 1946). As to whether it can have the latter effect in the circumstances of this case, see infra.
It is firmly established that habitual drunkenness, without more, does not constitute extreme cruelty. Cruikshank v. Cruikshank, 115 N.J. Eq. 322 (E. & A. 1934); *200 Bridge v. Bridge, 93 A. 690, 691, 692 (Ch. 1915). The incidents of 1946 and 1948, as well as everything else complained of, were condoned by the cohabitation of the parties until 1954, Weigel v. Weigel, 63 N.J. Eq. 677, 680, 681 (Ch. 1902), unless it can be concluded that the testimony concerning the supposed assault in August of that year is operative to establish a breach of the condition of subsequent conjugal kindness which is normally implied as the concomitant of condonation. It is concluded no such effect should be accorded that testimony, and for two reasons:
1. The proofs as a whole and the plaintiff's demeanor and manner on the witness stand lead me to disbelieve her story as to what transpired in August 1954. Although the testimony of her mother was offered to corroborate the cause of action and she testified the plaintiff told her all about her difficulties with defendant, she said that plaintiff told her the last separation was due to "arguments." Plaintiff said nothing about blows on the face. Nor did plaintiff mention this incident to her physician, although he was treating her at about that time for a nervous condition which she attributes to her husband's conduct.
There are other indications of unreliability in plaintiff's testimony. She vacillated on the matter of resumption of marital relations when she resumed cohabitation with defendant in July 1954. While she was positive there was no violence by her husband from 1948 to 1954, her mother says she had told her there was, in 1951. She testified that she resorted to medical treatment for her nerves, beginning in 1946, but the physician who she says attended her testified he first treated her in 1950, and then for difficulty in sexual intercourse. As to the supposed assault in August 1954, while she says defendant struck her "quite hard" on the face, hitting her "back and forth," there were, she goes on, no marks on her face.
On the basis of everything adduced relative to the supposed assault in August 1954, I am unable to find as a fact that it occurred. It is, moreover, corroborated neither *201 by witness nor circumstance. I find that plaintiff put defendant out of their home because she had had her fill of arguments with him. This does not approach the criteria laid down in our cases for a finding of extreme cruelty, i.e., "such cruel conduct as endangers the life or health of the wife, or renders her life of such extreme discomfort or wretchedness as to incapacitate her to discharge the duties of a wife, or that the conduct of the husband, if continued, would have brought about these conditions." Zehrer v. Zehrer, 5 N.J. 53, 58 (1950).
2. But even if the assault were found to have occurred in August 1954, it would not, in my judgment, operate to revive the acts of cruelty in 1946 and 1948 as a basis for the instant cause of action. The long and continued period of subsequent cohabitation, in circumstances entirely free from any conduct by the defendant amounting to a matrimonial offense within the statute, must be deemed to wipe the slate clear, so far as the early incidents are concerned.
Mr. Herr says, and with persuasive logic, that the condition of good behavior "should not be affixed to the condonation indefinitely." He maintains that "if revival is to be based essentially on repentance for the offense condoned, the condition should exist only so long as the subsequent conjugal unkindness is reasonably referable to a want of repentance of the particular offense condoned," Herr, Marriage, Divorce and Separation (2d ed. 1950) (11 N.J. Practice), sec. 789, p. 199.
This general viewpoint is reflected by other respectable authority. In Beale v. Beale (1951) Prob. 48 (1950), 2 All Eng. 539-CA, one of the judges of the Probate, Divorce and Admiralty Division of the English High Court of Justice took the position that condonation of an act of cruelty in the case before him was rendered absolute and beyond revival after cohabitation for eight years (the other judges found no cruelty to have taken place). He said:
"[Recent decisions] establish the proposition that condonation is conditional forgiveness, the condition being that the guilty party *202 should henceforward behave properly. He is, so to speak, taken back on probation. The probationary period does not, however, necessarily, last for life. * * * The further that past offenses recede into the distance, so much the more does it become difficult to revive them, until the time may come when the proper inference is that the forgiveness is no longer conditional, but has become absolute."
See also 1 Nelson on Divorce and Annulment (2d ed.), sec. 11.09, p. 393; Singewald v. Singewald, 165 Md. 136, 166 A. 441, 443 (Ct. App. 1934); Scullin v. Scullin, 65 R.I. 91, 13 A.2d 702, 704 (Sup. Ct. 1940); Dysart v. Dysart, 1 Rob. Ecc. 106, 141, 142, 163 Eng. Rep. 980, 992 (Ct. London, 1844), reversed on other ground 1 Rob. Ecc. 470, 163 Eng. Rep. 1105 (1847).
These views seem to me to accord with sound public policy, notwithstanding the precise point does not appear to have been considered in any New Jersey reported decision. It is not consonant with stability of the marriage relationship or the encouragement of domestic concord that an early act of cruelty should be held, notwithstanding long years of subsequent marital cohabitation free from cruelty, necessarily to constitute an effective basis of dissolution of the marriage at the instance of a spouse offended by an entirely isolated act of conjugal unkindness at a later time. Such a concept would hang a sword of Damocles over the threshold of many a normal household.
No rule should or can be formulated as to what period of cohabitation will work an absolute condonation. Each case should rest on its own unique factual basis, due weight being accorded the severity of the original acts, the time elapsed and the intervening behavior and mutual adjustment of the parties. If all these factors, in entirety, fairly conduce to the conclusion that "the forgiveness is no longer conditional" in the mind of the offended spouse, there may be no revival. I deem such a conclusion fully warranted in the present case.
On both of the bases hereinabove found, the complaint will be ordered dismissed.