44 N.J. Super. 305 (1957)
130 A.2d 396
DOROTHY MORRONE, PLAINTIFF-APPELLANT,
v.
DR. JOHN A. MORRONE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1957.
Decided March 25, 1957.
*307 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Israel E. Mischel argued the cause for appellant (Mr. Louis E. Saunders, attorney; Mr. Mischel on the brief).
Mr. Abe D. Levenson argued the cause for respondent.
*308 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from a Chancery Division judgment nisi dismissing the wife's complaint for separate maintenance and granting the husband's counterclaim for divorce on the ground of extreme cruelty. Permission was given plaintiff to prosecute the appeal on a typewritten transcript and brief. Counsel, however, filed no appendix whatever, in violation of R.R. 1:7-1, but we agreed to consider the appeal on the original transcript, plaintiff being in apparent lack of funds. The typewritten brief summarizes the facts in three pages, without a single reference to the transcript. Defendant's brief attempts to supply the deficiency in part by an extended resume of the testimony and by reproducing the court's oral decision. We are considering this appeal, notwithstanding plaintiff's totally inadequate presentation, solely because of the State's interest in the marriage relation.
We have been obliged to read all the pleadings and the transcript of testimony on file in the Clerk's office, as well as to examine the dozens of exhibits introduced during the 15 days devoted to the trial of the cause. We have carefully reviewed the more than 1,150 pages of testimony to determine whether there is any merit in plaintiff's claim that extreme cruelty was not established in the proofs. We find that it was, and this beyond peradventure.
The parties were married in 1931; they separated March 31, 1952, when defendant claims he was compelled to leave plaintiff by reason of her extreme cruelty. There were no children born of the marriage; an adopted daughter, 14 years old at the time of the separation, accompanied her father and has lived with him since. The judgment nisi awarded custody to defendant, with reasonable rights of visitation to the plaintiff; ordered defendant to pay for services rendered the trial court by J. Howard Haring, a handwriting expert of its own choice, and to pay counsel fees of $500 and $1,500, respectively, to attorneys who successively represented plaintiff in the course of the hearings.
Defendant is a practicing physician and surgeon of this *309 State and head of a small hospital in Union City, N.J. The acts of extreme cruelty complained of are detailed in some 16 pages of his amended counterclaim. The great majority of them occurred before the date of separation, and some later. Among other things, defendant alleges that plaintiff continuously drank to excess, despite his repeated entreaties that she desist. He claims that over the years, and in increasing measure, she called him vile and offensive names, in the presence of the adopted child, patients, relatives, friends and professional associates, and that she accused him, privately and in the presence of these people, with illicit relations with nurses and employees at the hospital, patients, wives of associates, and others. He alleges that she made countless phone calls to those whom he knew, disparaging his professional ability and charging him with having affairs with others, and that she sent what may generally be described as poison pen letters containing scurrilous accusations. Most of these calls and letters were subsequent to the separation. Plaintiff's vile language extended to the adopted daughter and included the charge, repeatedly made, that she was defendant's daughter by "one of his whores." An unspeakable accusation by her, involving the child and her husband, brought on the separation; the two immediately left the home.
It is entirely unnecessary to extend the list of charges or to detail their nature. Suffice to say, defendant proved them in full measure, without successful contradiction. The record demonstrates that plaintiff's accusations and conduct were continuous, deliberate and with absolutely no justification. She apparently was obsessed with the idea that her husband was a satyr and that his lust extended to every woman within range. She wrecklessly broadcast her fixation without regard to the sensibilities or reputation of those involved.
Habitual drunkenness, without more, has been held not to constitute extreme cruelty. Welch v. Welch, 34 N.J. Super. 197 (Ch. Div. 1955), affirmed 35 N.J. Super. 255 (App. Div. 1955); Cruikshank v. Cruikshank, 115 *310 N.J. Eq. 322 (E. & A. 1934). While habitual drunkenness in itself is not a ground for divorce in this State, it nevertheless should not and will not excuse actions which independently are of a character held to be extreme cruelty, if their effect upon the health of the other spouse is sufficient to meet the test of making it impossible to continue the marital relation without impairing the health or life of the complaining party.
There can be no question that plaintiff's conduct seriously impaired defendant's health and his ability to carry on his medical practice. The testimony was that in April 1952, directly after leaving the marital home, defendant was in such a state of nervous exhaustion and depression that if compelled to live with plaintiff he would suffer a complete nervous breakdown. Defendant had to close his office for several weeks after the separation because of his mental and physical condition. We fully agree with the trial court's finding that plaintiff's conduct undermined her husband's health and capacity to carry on his professional duties and, if continued, would probably result in disaster.
We need not here repeat some of the language plaintiff used to and about her husband, or the farthest reach of her charges of sexual promiscuity. Her language was inexcusable; her accusations were false and maliciously and wantonly made; they were made repeatedly and came to the husband's notice, and visited on him anguish and suffering which finally brought him to the brink of a breakdown. Clearly, we have a situation where "the conduct of a spouse is calculated to destroy the peace of mind and happiness of the other so as to utterly destroy the objects of matrimony * * *." Golden v. Arons, 36 N.J. Super. 371, 374 (Ch. Div. 1955). This case is completely controlled by what this court said in Friedman v. Friedman, 37 N.J. Super. 52, at pages 58 et seq. (App. Div. 1955). The principles there set out, and the authorities cited in support of them, have the same particular application here as in that case. And see MacArthur v. MacArthur, 135 N.J. Eq. 215 (E. & A. 1944); also Doty v. Doty, 92 N.J. Eq. 660 (E. & A. 1921); *311 Hill v. Hill, 97 N.J. Eq. 237 (Ch. 1925); Barton v. Barton, 97 N.J. Eq. 404 (Ch. 1925); Feybusch v. Feybusch, 110 N.J. Eq. 358 (E. & A. 1932); Perguidi v. Perguidi, 138 N.J. Eq. 559 (E. & A. 1946).
It has been observed that the counterclaim as well as the testimony dealt with a number of situations immediately following the separation of March 31, 1952. Plaintiff initiated a campaign of phone calls, day and night, sometimes numbering 30 a day, characterized by all kinds of obscene abuse. When defendant transferred the calls to a telephone exchange, the same kind of messages went to the operator in charge. Not only defendant, but others were the telephonic target. There were also a number of scurrilous letters addressed to defendant and others after the separation date.
The statute, N.J.S. 2A:34-2(c)  formerly R.S. 2:50-2(c), as amended  relating to actions for divorce on the ground of extreme cruelty, provides that no complaint for divorce on this ground may be filed until after six months from the date of the last act of cruelty complained of. The limitation does not apply in the case of a counterclaim, and this by reason of the express language of the statute. The acts following the separation were properly pleaded.
Plaintiff contends that the acts subsequent to the separation of March 31, 1952 cannot be regarded as extreme cruelty. As has already been noted, the great bulk of the acts complained of occurred prior to that date. Plaintiff has misconceived the trial court's use of the evidence concerning her misconduct subsequent to the separation. The record indicates that when plaintiff objected to testimony regarding her actions after March 31, 1952, the court plainly indicated that such evidence was being received only to characterize and give color to the offensive acts which had occurred prior to that time and had compelled defendant to leave the marital home. Soos v. Soos, 14 N.J. Misc. 381, 185 A. 386 (Ch. 1936); Yorn v. Yorn, 138 N.J. Eq. 608 (E. & A. 1946). It is not necessary for the purposes of this appeal to pass upon the question as to whether conduct of a spouse subsequent to separation may be regarded as independently substantive *312 offenses constituting extreme cruelty under our statute and practice. See 11 N.J. Practice (Herr, Marriage, Divorce and Separation) (1950), § 758, p. 152; Annotation, 129 A.L.R. 156, 160 (1940).
Plaintiff's defense to the counterclaim was, in our considered view, effectively demolished by the testimony adduced by defendant in support of his counterclaim and on rebuttal. Particularly devastating was the testimony of August Hartkorn, defendant's handwriting expert, and Haring, the trial judge's personally selected expert, establishing that the letters above referred to were in the disguised handwriting of plaintiff. They had the fullest opportunity to examine and analyze scientifically not only the disputed handwriting, but the "standards" of writing prepared by plaintiff and defendant for comparison purposes. They were firm in their opinion that there could be no doubt that the letters were in plaintiff's hand. We have read with some care the testimony of plaintiff's handwriting expert, who was of the opinion that the disputed letters were written by defendant. We find that his testimony does not measure up to that of Hartkorn or Haring in convincing quality.
Plaintiff having denied that the writings were hers, the testimony of Hartkorn and Haring was important in assessing the credibility to be accorded her testimony. Plaintiff urges that the testimony of handwriting experts has "long been held" to be of "the lowest order of evidence and should be accorded little evidential weight," citing cases of three-quarters of a century ago. That argument was advanced and rejected in the famous Lindbergh kidnapping case where the testimony of the handwriting expert proved to be a crucial element in the State's case. State v. Hauptmann, 115 N.J.L. 412, 432-435 (E. & A. 1935); certiorari denied 296 U.S. 649, 56 S.Ct. 310, 80 L.Ed. 461 (1935). See also Friedman v. Friedman, above, 37 N.J. Super., at page 61. The testimony of the handwriting experts was clearly admissible. We do not agree with plaintiff's contention that the trial judge unduly emphasized the report of his own expert in *313 reaching a conclusion, but on the contrary gave it only the relative importance which it deserved.
Nor do we agree that the court improperly received the testimony of the parties' adopted child, who was 16 at the time of the hearing. The point is raised for the first time here; no objection was made to her testifying. The capacity and responsibility of an infant under 14 to testify is to be determined by the trial court, Carlots v. Gavin, 133 N.J.L. 61 (E. & A. 1945), affirming 132 N.J.L. 52 (Sup. Ct. 1944); when the child is over 14, it is presumed to be competent to be sworn and to testify in any cause, civil or criminal. State v. Labriola, 75 N.J.L. 483, 484 (E. & A. 1907). Cf. Hare v. Pennell, 37 N.J. Super. 558, 565 (App. Div. 1955); State v. Gambutti, 36 N.J. Super. 219 (App. Div. 1955). The test is capacity and responsibility, not the reliability of the child's testimony. The matter lay in the trial court's discretion, and it was for that court to determine the weight to be given to the testimony of the infant witness. The court apparently found her not only competent to testify, but also credible in establishing some of the acts of extreme cruelty alleged by defendant; and so do we.
Plaintiff belatedly argues that defendant condoned the acts complained of. She could have pleaded condonation but did not do so. Condonation is an affirmative defense that must be pleaded, with the burden resting on the one so pleading. R.R. 4:8-3; Sabia v. Sabia, 16 N.J. Super. 273, 277 (App. Div. 1951). While it has been held that continued cohabitation after acts of extreme cruelty serves to condone them, Bamberg v. Bamberg, 123 N.J. Eq. 570 (E. & A. 1938), condonation is always conditional upon the future good conduct of the offending spouse. Burke v. Burke, 113 N.J. Eq. 77 (E. & A. 1933); cf. Welch v. Welch, above, 34 N.J. Super. 197 (Ch. 1955), affirmed 35 N.J. Super. 255 (App. Div. 1955). Condonation is based on repentance. There is nothing to show that plaintiff at any time regretted what she had done. Her conduct was in nowise conducive to forgiveness, nor was forgiveness ever asked for. Cf. Rushmore *314 v. Rushmore, 12 N.J. Misc. 575, 587-588 (Ch. 1934), affirmed 117 N.J. Eq. 451 (E. & A. 1935). The record reveals a case of patient forbearance, defendant always hoping that plaintiff would renounce alcohol, her unjustified suspicions and jealousy, and thus save the marriage. Living together in such circumstances does not constitute condonation of prior acts. Annotation, 32 A.L.R.2d 107, 131 (1953). In any event, if defendant at any time condoned what plaintiff had done, that condonation was revoked by her subsequent acts. Sperling v. Sperling, 19 N.J. Super. 570, 580 (App. Div. 1952); Michels v. Michels, 110 N.J. Eq. 393 (E. & A. 1932); Annotation, 32 A.L.R.2d 107, 155 (1953).
Finally, plaintiff argues that the trial court improperly admitted evidence of her conviction in the municipal court for using indecent language over the phone, N.J.S. 2A:170-29. Plaintiff denied she made such phone calls, and thereby her credibility came into question. Plaintiff relies on N.J.S. 2A:81-1, which provides that no person shall be excluded as a witness in any action because of conviction of crime. That statute is inapplicable; plaintiff was not excluded as a witness or limited in her testimony. However, N.J.S. 2A:81-12 states that for the purpose of affecting the credibility of a witness, "his conviction of any crime may be shown by examination or otherwise, * * * but no conviction of an offender shall be received in evidence against him in a civil action to prove the truth of the facts upon which the conviction was based." In State v. Block, 119 N.J.L. 277, 282 (Sup. Ct. 1938), it was held that conviction as a disorderly person is not a conviction of crime for the purpose of impeaching the credibility of a witness.
Be that as it may, our inquiry must always be whether plaintiff was prejudiced by the testimony in question, considered in the light of the entire record. We find that it was not. Plaintiff has in no way demonstrated just how she was prejudiced by the brief testimony relating to the municipal court action. This was not a case tried to a *315 jury, and it does not appear that the trial judge gave the testimony any significant weight. Moreover, there was plenary testimony establishing that plaintiff had made the phone calls which were the subject of the municipal court action, and an abundance of other proof entirely supporting the judgment of divorce.
The attorneys for plaintiff on this appeal have applied for counsel fees. They will be allowed $350.
The judgment is in all respects affirmed.