**UNITED STATES of America**

v.

**Paul Calvin EVANS, Anthony Walter Andrzejewski, and Charles Joseph Harriston,**
**Paul Calvin Evans, Appellant.**

**No. 16751.**

United States Court of Appeals
Third Circuit.

Argued Feb. 20, 1968.

Decided June 27, 1968.

---

Michael A. Querques, Querques & Isles, Orange, N. J. (Harvey Weissbard, Orange, N. J., on the brief), for appellant.

Wilbur H. Mathesius, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before KALODNER, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Defendant, Evans, appeals from his conviction and sentence under 18 U.S.C. § 659 of theft from an interstate shipment.

Evans was indicted with two others, Andrzejewski and Harriston. Harriston pleaded guilty before trial. Evans and Andrzejewski were tried twice. The jury was unable to agree at their first trial and on retrial both were found guilty and sentenced to imprisonment. Evans alone has appealed.

Evans argues that the trial court committed plain error which requires reversal notwithstanding counsel's failure to object when the judge charged the jury that "Ordinarily, it is assumed that a witness will speak the truth. * * * "

We have recently condemned a jury instruction that a witness is *"presumed"* to speak the truth, because it derogates from the jury's right to determine the credibility of witnesses and in a criminal case conflicts with the presumption of the defendant's innocence. United States v. Meisch, 370 F.2d 768, 773–774 (3 Cir. 1966); United States v. Johnson, 371 F. 2d 800, 804–805 (3 Cir. 1967).

The present case differs from *Meisch* and *Johnson* in a number of respects. In the first place, although the charge in the

three cases was taken from a form book, the draftsmen altered the recommended charge, and it is the altered form which appears here for the first time. In *Meisch* and *Johnson* the charge was that a witness was "presumed" to speak the truth, whereas here "presumed" has been changed to "assumed" and is prefaced with "ordinarily".[1]

We condemned as undesirable the charge in *Meisch* and *Johnson* not because it established a presumption in the technical legal sense, but rather because there was a substantial likelihood that it might mislead a jury of laymen. Their responsibility to determine the credibility of the witnesses was not to begin artificially at some initial starting point after an assumption or presumption [2] that the witnesses spoke the truth, but by a general application to the testimony of their everyday worldly knowledge regarding its inherent credibility and the effect of the witnesses' interest and demeanor as they observed it in the courtroom. See Government of the Virgin Islands v. Aquino, 378 F.2d 540, 548 (3 Cir. 1967).[3] We conclude therefore that substantially the same charge using an assumption rather than a presumption of the truthfulness of a witness is equally undesirable in a criminal case where it conflicts with the presumption of the defendant's innocence. The adverbial addition of "Ordinarily" does not effectually diminish the pervasiveness of the error. Nor is the error in such a charge overcome by a general discussion of the role of the jury in determining credibility or by an explanation of some of the factors which are relevant in determining credibility. The harm is not the product of what the charge says after it establishes the foundation of an original assumption or presumption, but lies in the creation of such a foundation in the first place. It is of course possible that a charge may so fully instruct the jury on the manner in which they are to determine the credibility of witnesses that the error in establishing this foundation might thereby be overcome,[4] but this is not accomplished by a charge which deals in generalities and fails to focus the jury's attention on the individual elements of the testimony of individual witnesses.

In the present case the trial judge correctly told the jury that they were the sole judges of the credibility of the witnesses, that each defendant was presumed to be innocent and that the gov-

---

1. The earlier version appears in Mathes, Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39 (No. 3.01), 67–68 (1961). The later version is in Mathes and Devitt, Federal Jury Practice and Instructions, § 9.01, pp. 111–12 (1965). There are also some verbal differences between the original and the later versions.

    The earlier version reads:
    "You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. A witness is presumed to speak the truth. But this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given, or by contradictory evidence."

    The later version reads:
    "You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. Ordinarily, it is assumed that a witness will speak the truth. But this assumption may be dispelled by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given."

2. A juror is likely to consider an assumption and a presumption synonymous. See State v. Berlovich, 220 Iowa 1288, 1294–1295, 263 N.W. 853, 856 (1935).

3. Of course, a jury may be told to consider the fact that a witness testified under oath in evaluating his testimony.

4. See United States v. Bilotti, 380 F.2d 649, 654–656 (2 Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 300 (1967) ; Stone v. United States, 379 F.2d 146 (D.C.Cir. 1967) ; Knapp v. United States, 316 F.2d 794 (5 Cir. 1963). See also Harrison v. United States, 387 F.2d 614 (5 Cir. 1968) ; United States v. Dichiarinte, 385 F.2d 333, 339 (7 Cir. 1967) ; United States v. Persico, 349 F.2d 6, 10–12 (2 Cir. 1965).

ernment had the burden of establishing his guilt beyond a reasonable doubt. After reviewing briefly the testimony of the witnesses for the government the judge took up the witnesses for the defense. He mentioned the claim of Evans and Andrzejewski that they had not even been present at the freight terminal where the theft occurred and recalled that Patricia El Badihy had testified as an alibi witness for Evans. At this point the judge charged the jury that credibility was the "great issue" which the jury faced and that he would therefore go into it somewhat further. He then read from the form book of Mathes and Devitt [5] as follows:

"You as jurors are the sole judges of the credibility of the witnesses, of the weight their testimony deserves. Ordinarily, it is assumed that a witness will speak the truth, but this assumption may be dispelled by the appearance and conduct of the witness or by the manner in which the witness testifies or by the character of the testimony given or by evidence to the contrary of the testimony given.

"You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified and every matter in evidence which tends to indicate whether a witness is worthy of belief. Consider each witness's intelligence, motives and state of mind and demeanor and manner while on the stand. Consider, also, any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict and the extent to which, if at all, each witness was either supported or contradicted by other evidence in the case."

The generalities which follow the assertion of the existence of an assumption of truthfulness are so broadly stated that they add virtually nothing to the common sense knowledge which jurors already possess. They cannot be said, therefore, to dissipate the charge that consideration of the question of credibility ordinarily begins with an assumption of the truthfulness of the testimony of the witnesses.

The error here therefore is in effect the same as that in *Meisch* and *Johnson*. Unlike *Meisch* and *Johnson*, however, the two defendants here testified on their own behalf and called witnesses to support their defense. Again, unlike *Johnson*, the defendants made no objection to the charge at trial.[6] There is, of course, a significant difference in the effect of a charge that an assumption or presumption of the truthfulness of witnesses exists if the defendant offered no testimony, for then the assumption or presumption runs exclusively in favor of the prosecution and is entirely in collision with the presumption of the defendant's innocence. If the defendant himself takes the stand and calls other witnesses on his behalf, however, it may in some cases appear that such a charge is of greater benefit to the defense than to the government, which may have called but a few witnesses or have relied largely on documentary evidence. It is therefore less clear in the present case that the error condemned in *Johnson* and *Meisch* is so substantial as to require reversal in the absence of an exception at trial.

The problem presented to us, however, is complicated by other errors at trial which add to the effect which the erroneous charge may have had on the jury. These deal with the judge's charge regarding the testimony of the accomplice, Harriston, and the admission of evidence that Evans' alibi witness, Patricia El Badihy, had earlier been convicted of crime.

At the time of the trial Harriston, who had pleaded guilty, was awaiting sen-

5. There are minor variances between the court's charge as reported in the transcript and the recommended form. See Mathes & Devitt, supra, note 1, § 9.01, pp. 11–12.

6. It does not appear whether an objection was made in *Meisch* and since the judgment was reversed and a new trial ordered on other grounds it was not necessary for the court to consider whether the instruction constituted plain error.

tence. He was an accomplice who as Judge Coffin said in McMillen v. United States, 386 F.2d 29, 36 (1 Cir. 1967), had not "paid [his] price to society" nor was he "free from carrot or stick." He was the principal government witness against Evans and it was he alone who placed Evans at the scene of the crime. He had a powerful inducement to seek the favor of the prosecution when he testified, since he had not yet been sentenced. His credibility was a matter of the utmost importance to the defendants. Yet when the jury deliberated they had no special instruction admonishing them to consider his testimony with great caution.[7] Instead they had the general instruction that ordinarily a witness is assumed to speak the truth.

An examination of the record reveals that defendants' counsel had originally requested a charge which in effect would have stated that Harriston's testimony should be given "very careful scrutiny."

The court refused the request and granted an exception.[8] Subsequently the court offered to give a similar charge, but defendant's counsel retreated and said that he was satisfied with the charge already given. At the court's insistence it was made clear that the defendants personally agreed.[9]

The conduct of counsel here amounts to an abandonment of the objection to the court's failure to charge that the jury should scrutinize carefully the testimony of the accomplice, Harriston, but the colloquy makes it clear that counsel's action resulted from his belief that the manner in which the charge would be given would open the question whether the jury should find that Harriston was in fact an accomplice.

Whatever the reason for the abandonment of the request for charge regarding the testimony of an accomplice, the absence of such an instruction allowed the effect of the erroneous

---

7. See United States v. Schanerman, 150 F.2d 941, 943 (3 Cir. 1945).

8. The request was: "Your Honor, I believe in the charge that the testimony of a co-conspirator should be given very careful scrutiny."

"The Court: Co-Conspirator or co-perpetrator? I think I can find it there and I will do something about it.

"Mr. Williams: That is all.

\* \* \* \* \*

"The Court: Mr. Williams, in view of your request after my charge and our discussion, I think we should make it clear on the record. After you requested something on conspiracy, I have here at the bench looked up the law on conspiracy, and in view of the fact there is no conspiracy charged in this indictment, I think it would be a mistake for me to charge conspiracy or any ramifications of conspiracy, and it is my judgment that the charge I made on credibility is sufficiently broad and proper to cover a co-perpetrator of this alleged crime. And I think you should have an exception to that.

"Mr. Williams: All right."

9. The court offered to charge that "an accomplice is one who voluntarily participates in the commission or planning of a crime. If the jury believes that the witness, Harriston in this case, directly

participated as an accomplice in the commission of the offense charged, his testimony should be closely examined and weighed with great care. Then we get into this. If the jury believes the testimony of an accomplice to be true beyond a reasonable doubt, that testimony is sufficient to convict the defendant, even though it is not corroborated by other evidence.

"Now, in view of your request, I think this is what I might have charged and perhaps should charge, and if you care to have it charged, I will call these jurors back.

"Mr. Williams: No, your Honor, in light of the charge that you made and also in light of the fact that these defendants deny that they were an accomplice of Mr. Harriston, I would ask that you not charge that.

"The Court: All right, but I want to be sure that if you want this or if they want it, they may have it.

"Mr. Williams: Yes, sir.

"The Court: You'd better talk to them. It says here, another alternative charge on it, that if the jury believes the testimony of an accomplice to be true beyond a reasonable doubt, that testimony is sufficient to convict the defendant, even though it is not corroborated by any other evidence. That is another version of it."

charge that a witness is assumed to speak the truth to apply to the testimony of the accomplice. The jury, therefore, had a right to believe that in the process of forming their opinion of credibility there existed an all-pervasive general foundation of an assumption that a witness, an accomplice no less than any other, ordinarily would speak the truth. In McMillen v. United States, supra, a case remarkably similar to the present one, it was held that a charge that witnesses are presumed to speak the truth, when coupled with a failure to charge that an accomplice's testimony is to be viewed with suspicion, required reversal as plain error even though no objection was made, where the accomplice's testimony was uncorroborated. We need not decide whether we would agree that the existence of corroboration is in all cases crucial to the question of plain error, for here only Harriston was able to place Evans at the scene of the crime and there was no corroboration of his testimony to this effect.

There is, moreover, an additional element of error in the admission of the evidence of prior conviction of Evans' alibi witness, Patricia El Badihy.

Mrs. El Badihy claimed to have seen Evans and another man, presumably Andrzejewski, in front of Evans' home at a time which would have made it impossible for them to be present at the freight terminal when the theft occurred. On cross-examination the government was permitted, over counsel's timely objection, to impeach her credibility by showing that she had been convicted of a New Jersey Disorderly Persons offense.

In this circuit the rule has long been established that a conviction which may be used to impeach a witness must be of a crime which is a felony or a misdemeanor amounting to crimen falsi.[10] See United States v. Montgomery, 126 F.2d 151, 155 (3 Cir.), cert. denied, 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754 (1942). See also United States v. Klass, 166 F.2d 373, 376 (3 Cir. 1948). This is not the universal rule and many jurisdictions permit impeachment by showing conviction of a crime which is not a felony if it involves moral turpitude.[11] The matter is not of constitutional proportion[12] and Rule 26 of the Federal Rules of Criminal Procedure leaves the question of admissibility of evidence to "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." We reaffirm our rule, for aside from felonies we believe impeachment should be limited to conviction of crimes which involve dishonesty or falsehood. Thus impeachment is restricted to major offenses and to crimes which touch the question of the honesty of the witness, and we believe it undesirable to broaden the rule to allow merely generally discrediting evidence to be introduced as any indication of testimonial unreliability.[13] Whatever residuary relevance a witness's conviction of some other violation of law may have on the question of his credibility is far outweighed by the prejudicial effect of discrediting him for conduct which is extraneous to the proceeding. In the practical reality of a trial the use of such convictions to aid the jury in determining

10. For a definition of offenses amounting to crimen falsi, see Commonwealth v. Jones, 334 Pa. 321, 323, 5 A.2d 804, 805 (1939). See also Commonwealth v. Kostan, 349 Pa. 560, 566, 37 A.2d 606, 609 (1944).

11. See, e.g., Pinkney v. United States, 380 F.2d 882 (5 Cir. 1967); United States v. Pennix, 313 F.2d 524, 530–533 (4 Cir. 1963); see also cases collected in 3 Wigmore, Evidence, § 987, pp. 572–616 (1940), and Supplement, pp. 205–26 (1964).

12. See Spencer v. State of Texas, 385 U. S. 554, 561 and n. 7, 87 S.Ct. 648, 17 L. Ed.2d 606 (1967).

13. It has been suggested that in the case of felonies also, impeachment should be permitted only when the crime involves dishonesty or falsehood.

See McCormick, Evidence, §. 43, p. 91; Proposed Uniform Rules of Evidence, Rule 21: "Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his credibility. * * *"

the honesty or trustworthiness of a witness is a device for the far greater advantage of dishonoring him.

██ The use of a conviction under the New Jersey Disorderly Persons Act for impeachment is erroneous under our rule. The Act proscribes a wide range of conduct and creates numerous quasi-criminal, petty offenses, unknown to the common law, which are subject to summary disposition and require neither indictment nor trial by jury. They constitute the lowest grade of offense in the New Jersey criminal system, which establishes high misdemeanors, misdemeanors, and Disorderly Persons offenses in a descending scale of seriousness.[14] They have been established as "police measure[s, which] * * * afford a speedy and effective remedy where the offense was less aggravating in circumstances. * * * The courts of general criminal jurisdiction could not possibly function effectively in our complicated urban civilization if they alone had exclusive jurisdiction over all of the offenses enumerated in the Disorderly Persons Act. Nor are the advantages all with society. The defendant is spared the brand of being adjudged a criminal, with all of its political, business and social implications. * * *" In re Garofone, 80 N.J.Super. 259, 270, 193 A.2d 398, 405 (1963), aff'd, 42 N.J. 244, 200 A.2d 101 (1964). The New Jersey courts have held that a conviction of a Disorderly Persons offense is not a conviction of a crime under the New Jersey statute which permits impeachment of a witness by showing his conviction of "any crime"[15] without limitation to crimes of any particular na-

ture,[16] and therefore is not admissible for impeachment.[17]

The conviction used to impeach Mrs. El Badihy was for the violation of N.J.S. § 2A:170–5, N.J.S.A., which provides:

"*Prostitution; soliciting unlawful sexual or indecent acts.*

"Any person who practices prostitution, or who, by word, act, sign or any device, invites or solicits unlawful sexual intercourse or any other unlawful, indecent, lewd or lascivious act, is a disorderly person."

The government had a copy of the police report of the conviction, but it apparently did not show the precise conduct for which the witness was convicted, and the prosecutor and the witness varied in their references to its nature during the cross-examination. Although the prosecutor ultimately characterized the conviction as one for prostitution, the section prohibits not only prostitution but also the solicitation of any other unlawful act. The crime of prostitution, which is denounced as a misdemeanor by N.J.S. 2A:133–2, subd. g, N.J.S.A., is a more serious and separate offense from the Disorderly Persons offense on which the witness was cross-examined. Each of the two provisions is still in force.[18] It is clear that the offense of which Mrs. El Badihy was convicted is neither a felony nor a misdeameanor amounting to crimen falsi, and therefore was not admissible to impeach her credibility. Whatever the difference between the two provisions, the jury was permitted to consider her credibility impeached for conviction of an offense which lay outside the rule which we have prescribed and in this case was

---

14. See State v. Doyle, 42 N.J. 334, 200 A. 2d 606 (1964).

15. "For the purpose of affecting the credibility of any witness, * * * his conviction of any crime may be shown by examination or otherwise * * *." N. J.S. 2A:81–12, N.J.S.A.

16. See State v. Hurt, 49 N.J. 114, 228 A. 2d 673 (1967). See also State v. Hawthorne, 49 N.J. 130, 228 A.2d 682 (1967).

17. See State v. Block, 119 N.J.L. 277, 282, 196 A. 225, 229 (Sup.Ct.), aff'd per cur-

iam, 121 N.J.L. 73, 1 A.2d 408 (Ct.Err. & App.1938); State v. Ashby, 81 N.J. Super. 350, 361, 195 A.2d 635, 640 (1963), rev'd on other grounds, 43 N.J. 273, 204 A.2d 1 (1964). See also Morrone v. Morrone, 44 N.J.Super. 305, 314–315, 130 A.2d 396, 401 (1957).

18. See State v. Adams, 77 N.J.Super. 232, 185 A.2d 882 (1962), holding that the later, Disorderly Persons provision did not impliedly repeal the earlier prostitution statute.

moreover left to speculate as to its precise nature.

Interestingly enough, the propriety of the use for the purpose of impeachment of a conviction under the New Jersey Disorderly Persons Act was recently decided in the First Circuit. Ciravolo v. United States, 384 F.2d 54, 55 (1 Cir. 1967). There the conviction was for car rental fraud under N.J.S. 2A:170-45, N.J.S.A., and the court held the conviction inadmissible.

The error in the admission of Mrs. El Badihy's conviction under the Disorderly Persons Act was emphasized in the court's charge to the jury that the credibility of a witness may be impeached by conviction of any crime, without mentioning any limitation regarding its seriousness, nature or degree.[19] Since Patricia El Badihy was the only witness who had admitted a prior conviction the charge obviously dealt only with her testimony. The jury had already been told by the court that her testimony that she saw Evans at his home raised an issue of credibility because it was in conflict with Harriston's testimony that Evans was at the scene of the theft at that time. The charge therefore permitted the jury to consider that her testimony was discredited or impeached because she had been convicted of crime. Since the testimony was crucial to Evans' defense and the evidence of her prior conviction of a Disorderly Persons offense was erroneously admitted to impeach her credibility the error constituted real and serious harm to Evans.

■ The totality of the circumstances which we have described—the charge of the court that there is an assumption that a witness speaks the truth, coupled with the absence of an instruction specifically calling attention to the problem of credibility of an accomplice's testimony and to the requirement that it should be received with great caution, and the erroneous admission of the conviction of a crucial defense witness for a Disorderly Persons offense—leads us to the conclusion that the issue of Evans' guilt was decided by the jury under guiding instructions and legal rulings which failed to guarantee him a trial free from fundamental or plain error. Thus even if no single one of the errors which were not adequately objected to amounted to fundamental or plain error, and even if the admission of the conviction of Patricia El Badihy over defendant's objection would not alone constitute reversible error, there combined effect requires a new trial.

Since a new trial will be had, we need not consider Evans' claim that he was prejudiced because both he and Andrzejewski were jointly represented by the same appointed counsel at their second trial,[20] for Evans alone has appealed and the retrial therefore will proceed against him alone.

■ Evans also claims the existence of a fatal variance between the indictment and the proof. He has not shown, however, that the alleged variance impaired his ability to defend himself against the charge or failed to identify the nature of the charge against him. In these circumstances any variance must be regarded as harmless. See United States v. Perlstein, 126 F.2d 789, 799 (3 Cir.), cert. denied, 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942).

The judgment of conviction will be reversed and the cause remanded to the district court for a new trial.

---

19. The court said:
"I charge you further a witness may be discredited or impeached by evidence that the witness has been convicted of a crime. If you believe that any witness has been impeached or discredited, and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, that you may think it deserves."

20. At their first trial each defendant had separate appointed counsel.